UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| EMANUEL JOHNSON, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1158 (RMU) |
| | : | | |
| v. | : | Document No.: | 3 |
| | : | | |
| JOHN ASHCROFT, *et. al.* | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### Denying in Part and Granting in Part the Defendants' Motion to Dismiss the Complaint

## I. INTRODUCTION

The *pro se* plaintiff, Emanuel Johnson, Jr., brings a constitutional torts claim against various employees of the District of Columbia. Specifically, the plaintiff sues the following D.C. employees in their official and individual capacities: Kelvin Robinson, Barrett Prettyman, Charles Maddox, Austin Anderson, Karen Branson, Judy Banks, Gail Davis, Teresa Quon, David Jackson, Terry Wyllie, and John A. Koskinen (collectively, the "D.C. defendants").[1] The plaintiff sues D.C. defendants Prettyman and Wyllie for allegedly interfering with his employment relationship with the D.C. Office of the Inspector General ("OIG"). The plaintiff sues the remaining D.C. defendants for allegedly submitting false evidence in a related proceeding. This matter is before the court on the D.C. defendants' motion to dismiss the

---

[1] The complaint also names John Ashcroft, J.C. Carter, Danny O. Coulson, Ralph Lawrence, Steven Riggin, James W. Vatter, and Edward M. Shubert as federal defendants, but, to date, only the District defendants have filed a motion to dismiss. Accordingly, this opinion addresses only the D.C. defendants' motion to dismiss and the claims against those defendants.

complaint for failure to effect timely service and for failure to comply with the applicable statutes of limitations. Because the plaintiff makes a cognizable claim against Prettyman and Wyllie, the court denies the defendant's motion to dismiss the claims against them. Because the claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are barred by res judicata, the court grants the motion to dismiss as to those defendants.

## II. BACKGROUND

### A. Factual History

The plaintiff, an African-American male, worked as a special agent with the FBI between 1973 and 1999. Compl. at 13. During that time, the plaintiff was a named plaintiff in a Title VII class action lawsuit filed in the United States District Court for the District of Columbia by African-American special agents against the FBI. *Id.* at 26. That lawsuit, commonly known as the BADGE lawsuit, settled in 1993. *Id.*; Mem. in Support of Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 4. After retiring from the FBI, the plaintiff began working as a special agent with the OIG. Pl.'s Opp'n at 3-4. Although it is unclear from the plaintiff's complaint, it seems that the plaintiff applied to work at the OIG twice: once in 1998 and once in 1999.[2] Compl. at 4, Ex. E.

---

[2] The plaintiff also states that *Johnson v. Ashcroft, et al.*, 00-cv-2743 is a related case regarding his termination from the OIG. Mem. in Support of Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 4, Ex. E. The D.C. Circuit opinion in that case states that he began his employment at the OIG in June 1999. *Johnson v. Ashcroft et al.*, No. 03-5221, slip op. at 1 (D.C. Cir. Dec. 14, 2004).

In Counts III and IV of the plaintiff's complaint,[3] the plaintiff alleges that D.C. defendants Prettyman and Wyllie conspired to interfere, and did interfere, with his employment relationship with the OIG. *Id.* at 25-71. Specifically, the plaintiff alleges that Wyllie spread rumors about him and that he was not selected for a position at the OIG in 1998 as a result. *Id.* at 67-68. The plaintiff further alleges that Prettyman improperly considered racially-charged statements made by federal defendant Carter in his decision not to hire the plaintiff in 1998. Pl.'s Opp'n at 4, Ex. E. The plaintiff claims that he found out about Wyllie's and Prettyman's actions after on April 14, 2003, when he heard Richard Sullivan's testimony at a trial related to the plaintiff's termination from the OIG, *Johnson v. Ashcroft et al.*, No. 00-cv-2743. Pl.'s Opp'n at 2-3, 8, Ex. E.

The remaining counts of the plaintiff's complaint allege that some of the D.C. defendants provided false evidence to the court during the proceedings surrounding his termination from the OIG after he was hired in 1999. Compl. 72-74. The plaintiff contends that the false evidence, consisting of a trial exhibit and an affidavit, resulted in an adverse ruling in *Johnson v. Ashcroft et al.*, No. 00-cv-2743, on July 9, 2003. Compl. at 73-74; Pl.'s Opp'n at 8.

### B. Procedural History

The plaintiff filed the complaint in the current action on July 9, 2004. The plaintiff claims that he executed requests for waiver of service as to the D.C. defendants in the early part of November 2004. Pl.'s Opp'n at 5. Defendant Banks returned a signed request for a waiver of

---

[3] Counts I, II and V of the plaintiff's complaint contain his allegations against the federal defendants. The plaintiff alleges that the federal defendants created a hostile work environment during his tenure at the FBI, Compl. at 14, and that they retaliated against him for his participation in the BADGE class action suit. Pl.'s Opp'n at 4.

3

service on November 13, 2004, *id.* at 2, and was the only D.C. defendant to return the request for waiver of service. *See* Compl. at 6; Def.'s Mot. at 5.

The D.C. defendants filed a motion to dismiss the complaint on December 21, 2004 because the plaintiff failed to effect timely service. Additionally, the D.C. defendants claim that the plaintiff's complaint is time barred by the applicable statute of limitations. The court now turns to the defendants' motion.

### III.  ANALYSIS

#### A.  Failure to Effect Timely Service

The defendants first argue that the complaint should be dismissed because the plaintiff did not effect timely service on the D.C. defendants, as required by Federal Rule of Civil Procedure 4(m). Defs.' Mot. at 4. The court agrees that the plaintiff failed to effect timely service. But, because this Circuit gives wide latitude to *pro se* plaintiffs and because the D.C. defendants have not been prejudiced by the late service, the court, in its discretion, declines to dismiss the plaintiff's complaint for failure to timely serve the defendants.

**1. Legal Standard for a Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process**

A party can move the court to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. "[T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotations omitted); *Hilsaka v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003).

Rule 4 governs service of process. FED. R. CIV. P. 4. Rule 4(m) provides the time limits for service and the consequences of failing to provide proper service. It states that:

> [i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Thus, where the plaintiff fails to effect proper service within the 120-day time limit laid down by Rule 4(m), the plaintiff carries the burden of showing good cause for that failure. FED. R. CIV. P. 4(m); *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004). Even if the plaintiff does not show good cause, the court may, in its discretion, direct the plaintiff to effect service within a certain time rather than dismiss the case. FED. R. CIV. P. 4(m). Ultimately, however, unless the procedural requirements of effective service of process are satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).

### 2. The Plaintiff Failed to Effect Timely Service

The plaintiff argues that, although he filed his complaint on July 9, 2004, the period for service of process did not begin to run until July 15, 2004, the day the plaintiff received the signed summonses from the clerk of the court. Pl.'s Opp'n at 4-5. The plaintiff's argument, however, is entirely without merit. Rule 4(m) explicitly states that the complaint and the summons must be served "within 120 days *after the filing of the complaint*." FED. R. CIV. P. 4(m) (emphasis added). The rule does not carve out any exceptions based on the date that the

clerk signs the summons. Accordingly, the deadline for service was November 6, 2004. Because the plaintiff did not serve the requests for waiver of service until after that date, Pl.'s Opp'n at 4; Pl.'s Opp'n to Defs.' Supp. at 2, he failed to serve the defendants in a timely manner.[4]

### 3. The Court Declines to Dismiss the Case Based on the Plaintiff's Failure to Effect Proper Service

Notwithstanding the plaintiff's failure to effect timely service on the D.C. defendants, the court does not dismiss the complaint in its entirety. The court's decision is based on the following: (1) the plaintiff effected service within a few days of the deadline, (2) the defendants have not claimed that they were prejudiced by the delay in effecting service, and (3) the plaintiff is litigating this case *pro se*.

When a plaintiff fails to effect proper service without showing good cause, Rule 4(m) entrusts courts with the discretion to either dismiss the case or to direct the plaintiff to perfect service within a prescribed period of time. FED. R. CIV. P. 4(m). Factors that a court may consider in exercising its discretion include: (1) whether the defendants show any actual harm on the merits of the suit caused by the delay in service; (2) whether it is likely that the defendants received actual notice of the suit within a short time after the attempted service; and (3) whether

---

[4] In the alternative, the plaintiff argues that he has shown good cause for his failure to effect timely service. The court finds the plaintiff's excuses for not effecting service unpersuasive. The plaintiff's excuse that he is involved in numerous complex suits, Pl.'s Opp'n. at 5, 7, does not show that he had good cause to fail to effect timely service. Indeed, attorneys involved in many complex suits are still expected to comply with the Federal Rules of Civil Procedure. The plaintiff's claim that he "utilized economic discretion" in incurring costs to obtain the addresses of some of the defendants is also unavailing. The plaintiff was able to perfect service within ten days after the deadline for service had passed, *id.* at 5, suggesting that his lateness was not an exercise in "economic discretion," but rather, a lack of diligence. Furthermore, the plaintiff that does not have the authority to *sua sponte* "coordinate service results for the convenience of this court." *Id.* at 7. The court assures the plaintiff that it can handle the logistical process of a complex case so long as the parties follow the Federal Rules of Civil Procedure.

dismissal without prejudice will effectively equal dismissal with prejudice because the statute of limitations has run after the filing of the suit.  *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002); *see also Panaras v. Liquid Carbonic Ind. Corp.,* 94 F.3d 338, 340 (7th Cir. 1996).  This court, in previous cases, has attempted to balance the hardships that the plaintiff and the defendants face.  *Wilson v. Prudential Fin.*, 332 F.Supp.2d 83, 89 (D.D.C. 2004) (granting an extension of time to perfect service where there was no great prejudice to the defendant).  The D.C. defendants in this case have not claimed that they were prejudiced by the late service.  Also, the D.C. defendants likely received actual notice when Banks returned the waiver of service request after the service deadline had passed.

Further, pro se plaintiffs are generally subject to less stringent standards in filing and maintaining their lawsuits than those plaintiffs who are represented by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* complaint is subject to less stringent standards than formal pleadings drafted by attorneys).  This circuit also affords *pro se* plaintiffs latitude with regards to service issues.  The D.C. Circuit has held that "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleading."  *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993).  In *Moore*, the court emphasized the "importance of providing *pro se* litigants with the necessary knowledge to participate effectively in the trial process," and concluded that while the courts "do not need to provide detailed guidance to pro se litigants . . . [they] should supply minimal notice of the consequence of not complying with procedural rules."  *Id.*; *see also Hilska v. Jones*, 217 F.R.D. 16, 22 (D.D.C. 2003) (declining to dismiss the *pro se* plaintiff's complaint without minimal notice of the consequence of his failure to effect proper service).  Accordingly, the court

declines to dismiss the plaintiff's complaint based on the failure to effect timely service.

### B.  The Statute of Limitations

The defendants also argue that this court should dismiss the plaintiff's claims because they are barred by the statute of limitations.  Defs.' Mot. at 6.  The defendants state that the plaintiff's claims against Prettyman and Wyllie are based on 42 U.S.C. § 1986, which has a one-year statute of limitations, and that the claims against the other D.C. defendants are based on 42 U.S.C. § 1983, which has a three-year statute of limitations.  *Id.*  As fully set forth below, the court rules that the plaintiff's claims are not barred by the applicable statute of limitations.

#### 1.  Legal Standard for Rule 12(b)(6) and Statute of Limitations

A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998).  Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred.  *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C. Cir. 1985).  If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds.  *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989)).

### 2. The Plaintiff's Claims Against Prettyman and Wyllie are not Barred by the Applicable Statute of Limitations

The defendants' argument that the plaintiff's claims against Prettyman and Wyllie are brought under 42 U.S.C. § 1986,[5] and hence barred by its one year statute of limitations, is incorrect. The plaintiff claims that he was not selected for a job at the OIG in 1998 because Prettyman and Wyllie were concerned that he might create "racial problems." Pl.'s Opp'n, Ex. E. Actions alleging employment discrimination on the basis of race may be brought under § 1981, which has a four-year statute of limitations. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 373, 383 (2004) (holding that a hostile work environment claim was governed by § 1981 and explaining that § 1981 claims are governed by a four year statute of limitations); *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (noting that § 1981 applies to claims of racial discrimination). Additionally, the statute of limitations period begins to run when a plaintiff, "in the exercise of due diligence," would become aware of the defendant's actions. *Connors v. Hallmark & Sons Coal Co.*, 935 F.2d 336, 343 (D.C. Cir. 1991). *See also United States v. Kubrick*, 444 U.S. 111, 122-24 (1979) (holding that for a cause of action to accrue, the plaintiff must know that he has been hurt and who inflicted the injury). The plaintiff alleges that he found out about Prettyman and Wyllie's acts of racial discrimination only upon hearing sworn testimony in April 2003. Pl.'s Opp'n at 8. Because the plaintiff filed his complaint in July 2004, the plaintiff asserted his claim well within the four year statute of limitations. Accordingly, the plaintiff's allegations against Prettyman and Wyllie were timely filed.

---

[5] Section 1986 creates a cause of action for neglect in failing to prevent a conspiracy to violate an individual's civil rights; the statute of limitations for actions brought under § 1986 is one year. 42 U.S.C. § 1986.

### 3. The Plaintiff's Claims Against the Other D.C. Defendants are not Barred by the Statute of Limitations.

The plaintiff's claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are based on 42 U.S.C. § 1983. Pl.'s Opp'n at 8-9. Section 1983 has a three-year statute of limitations. *Singletary v. District of Columbia*, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003). The defendants argue that the claims against these defendants are untimely because "the most recent alleged action occurred on May 10, 2000." Defs.' Mot. at 6. The plaintiff, however, contends that he did not become aware of these defendants' wrongful acts until Sullivan's testimony in a related matter in April 2003. Pl.'s Opp'n at 8. Because at this stage of the proceedings the court must construe all material facts in the complaint in favor of the plaintiff, *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), the court accepts as true that the statute of limitations began to run in April 2003. Because the plaintiff filed his complaint on July 2004, his claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are not barred by the statute of limitations.

### C. Res Judicata

Although the court does not rule that the claims against Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are barred by the statute of limitations, the court determines that the plaintiff's claims against these defendants are nevertheless barred by res judicata. In Counts VI – X, the plaintiff claims that defendants Davis, Quon, Maddox, Andersen, and Branson had a role in submitting a false affidavit to Magistrate Judge Facciola in the civil action 00-2743. Compl. at 72-73. In Counts XI and XII, the plaintiff claims that defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks entered a "false letter" as a trial exhibit in the same proceedings. Compl. at 73-74. As discussed below,

the plaintiff's indirect attack on a previous adverse ruling is barred by the doctrine of res judicata.

### 1. Legal Standard for Res Judicata

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Communications, Inc. v. Fed. Communications Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001) (citing *id.*); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

Because "res judicata belongs to courts as well as to litigants," a court may invoke res judicata *sua sponte*. *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997); *see also Tinsley v. Equifax Credit Info. Servs., Inc.*, 1999 WL 506720, at *1 (D.C. Cir. 1999) (per curiam) (noting that a district court may apply res judicata upon taking judicial notice of the parties' previous case).

## 2. The Plaintiff's Claims are Barred by Res Judicata

Perhaps because he has already lost on appeal, the plaintiff does not bring a direct attack on Judge Facciola's ruling. Instead, he brings a claim against some of the D.C. defendants alleging that they submitted a false affidavit and a false trial exhibit that led to the adverse ruling. Compl. 72-74.

The plaintiff's indirect attack on a previous adverse ruling is nothing more than an attempt to relitigate the claim that he was improperly discharged from the OIG. The plaintiff's own complaint states that he became aware of the facts surrounding the allegedly false affidavit in April 2003, Pl.'s Opp'n at 8, before Judge Facciola issued a ruling on July 9, 2003.[6] While the plaintiff has not submitted much information with respect to the allegedly false trial exhibit submitted by the D.C. defendants, the court notes that the plaintiff never filed a Rule 60(b) motion alleging that Judge Facciola based his decision on either a false affidavit or a false trial exhibit. *See Russell v. Sunamerica Secur., Inc.*, 962 F.2d 1169, 1176-77 (5th Cir. 1992) (noting

---

[6] The court notes that Judge Facciola addressed the plaintiff's concerns surrounding the affidavit. The 14-page transcript excerpt submitted by the plaintiff shows that Judge Facciola investigated some of the plaintiff's concerns about the affidavit. Pl.'s Opp'n, Ex. J. The plaintiff also submitted an e-mail, Pl.'s Opp'n Ex. J, to support the allegation that the affidavit in question is untrue. But, the e-mail is stamped "Plaintiff's Exhibit 28" from the prior proceeding before Judge Facciola, which further supports the court's conclusion that the trial Judge had explored the issues surrounding the veracity of the affidavit.

page13

that a "collateral attack on the validity of the prior judgment is improper.  While fraudulent procurement of a prior judgment may indeed preclude the application of res judicata, the party claiming fraud should address this claim  to the court which rendered the first judgment." (citing 18 C. WRIGHT, A. MILLER & E. COOPER § 4415, at 129; Restatement (Second) of Judgments §§ 26, 78-82 (1981)).

As a result, the court interprets the plaintiff's claim as nothing more than an attack on the previous adverse ruling.  *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 (7th Cir. 1986) (holding that the plaintiff's claim based on allegedly fraudulent documents was barred on res judicata grounds because the plaintiff did not assert that the documents were fraudulent in a previous suit).  This court echoes the sentiment expressed in *Griffin v. Fed. Deposit Ins. Corp.*, 831 F.2d 799, 803 (8th Cir. 1987): "A litigant may not sit idly by during the course of litigation and then seek to present additional defenses in the event of an adverse outcome . . . the [plaintiff] had [his] day in court."  Accordingly, the court *sua sponte* dismisses the plaintiff's claims against D.C. defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks on res judicata grounds.[7]

---

[7] Moreover, the court doubts that Judge Facciola would have issued a different ruling had he not considered the allegedly false evidence because that evidence is just one of the grounds that form the basis of his decision.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion to dismiss.  Accordingly, defendants Davis, Quon, Jackson, Maddox, Andersen, Branson, Koskinen, Robinson and Banks are dismissed from this suit.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of August 2005.

RICARDO M. URBINA
United States District Judge
