UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| EMANUEL JOHNSON, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1158 (RMU) |
| | : | | |
| v. | : | Document No.: | 21 |
| | : | | |
| JOHN ASHCROFT *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

Denying in Part and Granting in Part the Defendants'
Motion for Summary Judgment[1]

## I. INTRODUCTION

This case comes before the court on the federal defendants'[2] motion for summary judgment. The *pro se* plaintiff, Emanuel Johnson, Jr., brings an employment discrimination claim, alleging that the defendants discriminated against him when he was employed by the Federal Bureau of Investigation ("FBI") and by the District of Columbia ("D.C.") Office of the Inspector General ("OIG"). The federal defendants move to dismiss the case, arguing primarily

---

[1] The defendants style their motion as a motion to dismiss for failure to state a claim. Because both parties submitted materials outside the pleadings and because the court considered these materials in rendering the present decision, the court treats the defendants' motion to dismiss as a motion for summary judgment. Fed. R. Civ. P. 12(b); *Fraternal Order of Police Dep't of Corrs. Labor Comm. v. Williams*, 375 F.3d 1141, 1144 (D.C. Cir. 2004).

[2] The plaintiff sues various District of Columbia ("D.C." or the "District") employees (the "D.C. defendants"), as well as John Ashcroft, J.C. Carter, Danny O. Coulson, Ralph Lawrence, Steven Riggin, James W. Vatter and Edward Schubert (the "federal defendants"). The court previously granted in part and denied in part the D.C. defendants' motion to dismiss.

that the plaintiff's claims are barred by res judicata.[3]  Because res judicata bars Counts I, II and V, the court dismisses those counts.  Because the plaintiff has not previously litigated the claims raised in Counts III and IV, the court denies the defendants' motion for summary judgment as to those counts.

## II.  BACKGROUND

### A.  Factual History

The plaintiff, an African-American man, worked as a special agent with the FBI between 1973 and 1999.  Compl. at 8.  During that time, the plaintiff was the lead plaintiff in a Title VII class action lawsuit filed in the United States District Court for the District of Columbia by African-American special agents against the FBI.  *Id.* at 26.  That lawsuit, commonly known as the BADGE lawsuit, settled in 1993.  *Id.*  Under the terms of the BADGE settlement agreement, the plaintiff waived any then-pending claims arising out of the defendants' discriminatory employment practices.  *Johnson v. Ashcroft*, 2005 WL 2064095, at *1 (D.D.C. Aug. 25, 2005).

After the BADGE lawsuit settled, the plaintiff brought another lawsuit, *Johnson v. Reno*, Civ. No. 93-2234, alleging retaliation based on his role as the lead plaintiff in the BADGE lawsuit.  *Id.*  The parties settled the retaliation suit on June 1998.  *Id.*  The 1998 settlement

---

[3]  The federal defendants also argue that the plaintiff failed to effect timely service.  The court rejected the same argument when it analyzed the D.C. defendants' motion to dismiss.  *Johnson v. Ashcroft*, 2005 WL 2073752 (D.D.C. Aug. 17, 2005).  Like the D.C. defendants, the federal defendants do not argue that they were prejudiced by the plaintiff's delay in service.  *Miller v. Holzman*, 2006 WL 568722, at *24-25 (D.D.C. Mar. 9, 2006) (explaining that a defendant moving to dismiss a case for failure to serve properly must show that he was prejudiced).  Because this Circuit affords *pro se* plaintiffs wide latitude "to correct defects of service of process," *id.* (citing *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993)) and because the federal defendants have not shown that the plaintiff's tardy service prejudiced them, the court rejects their arguments regarding service.

agreement states that the plaintiff agreed "to release and forever discharge" the FBI from liability from any claims "which were or could have been raised on or before the effective date" of the agreement. *Johnson*, 2005 WL 2064095, at *5.

After retiring from the FBI, the plaintiff applied to work at the OIG twice: once in 1998 and once in 1999. *Id.* In 1999, the plaintiff began working as a special agent with the OIG. Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 20.

### B.  Procedural History

The plaintiff filed the complaint in this action on July 9, 2004. The D.C. defendants filed a motion to dismiss the complaint on December 21, 2004. On August 17, 2005, the court granted in part and denied in part the D.C. defendants' motion to dismiss. The federal defendants filed a motion for summary judgment on October 15, 2005. The court now turns to the federal defendants' motion.

### III.  ANALYSIS

The plaintiff's 75-page, 12-count complaint repeats many of the allegations in his prior suits before this court. Only some of the counts involve the federal defendants. Specifically, Counts I and II allege that federal defendants Coulson, Vatter, Lawrence and Riggin conspired to violate, and did violate, the plaintiff's due process rights by destroying documents he had requested as part of a 1983 lawsuit challenging a performance appraisal. Compl. at 15, 21, 24. Counts III and IV allege that federal defendant Carter conspired to interfere, and did interfere, with the plaintiff's employment relationship with the OIG in 1998. *Id.* at 25, 70; Pl.'s Opp'n at 20. Lastly, Count V alleges that federal defendants Carter and Schubert violated the plaintiff's

rights by interfering with a claim he filed with the Office of Workmen's Compensation ("OWCP").  Compl. at 71.

### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory

statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.  Legal Standard for Res Judicata

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001) (citing *id.*); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309.

In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

### C. The Court Grants Summary Judgment on Counts I and II

The first two counts of the complaint allege that federal defendants Coulson, Vatter, Lawrence and Riggin destroyed documents that the plaintiff requested as part of a 1983 lawsuit challenging a performance appraisal. Compl. at 15, 21, 24. The defendants move to dismiss those counts arguing, *inter alia*, that the BADGE settlement agreement bars the plaintiff from bringing the claims in Counts I and II. Defs.' Mot. at 9. The plaintiff, however, argues that "[d]espite the defendant's literary puffery, plaintiff was not aware of the destruction of these documents until December 2003." Pl.'s Opp'n at 20.

"[N]ewly discovered evidence normally does not prevent the application of res judicata," unless the evidence was "either fraudulently concealed or when it could not have been discovered with due diligence." *Guerrero v. Katzen*, 774 F.2d 506, 508 (D.C. Cir. 1985) (citing *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970), *cert. denied*, 400 U.S. 832 (1970)); *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202-03 (9th Cir. 1982), *cert. denied*, 459 U.S. 1087 (1982)). Neither the plaintiff's complaint nor his opposition to the defendants' motion allege that the defendants fraudulently concealed evidence or that he was unable to discover these documents with due diligence. Furthermore, the facts indicate that the plaintiff did not receive the requested documents because, in large part, he did not exercise due diligence in his 1983 lawsuit. That is, although the plaintiff now complains that the defendants

did not provide the documents he requested, the plaintiff should have raised the defendants' alleged failure to provide the documents in the course of his 1983 lawsuit.[4]  *San Remo Hotel, LP v. City and County of San Francisco*, 125 S. Ct. 2491, 2500 n.16 (2005) (stating that res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised in [a previous] action").

On May 17, 2000, the signatories to the BADGE settlement agreement executed an amendment,[5] the purpose of which was to "resolve all outstanding class issues related to promotions, discipline, and performance evaluations." *Johnson*, 2005 WL 2064095, at *4 (citing the parties' Notice of Proposed Mediation Settlement Agreement to the court).  Additionally, the language of the 1998 settlement agreement explicitly states that the plaintiff agreed "to release and forever discharge" the defendant from liability for any claims "which were or could have been raised on or before the effective date." *Id.*, 2005 WL 2064095, at *5.  The plain language of these agreements, in other words, bars the plaintiff's present claim that the defendants allegedly destroyed documents relating to his 1983 lawsuit.  Although the plaintiff states that he found out about the alleged document destruction in late 2003, the plaintiff does not explain the significance of the alleged destruction, nor does he show that the evidence was fraudulently concealed or that he could not have discovered it with due diligence.  Accordingly, res judicata

---

[4] Moreover, the plaintiff does not even allege that the events surrounding his 1983 lawsuit affected his decision to settle the BADGE lawsuit in 1993 or the retaliation lawsuit in 1998. *Jordan v. Verizon Corp.*, 2005 WL 3116750, at *1 (2d Cir. Nov. 22, 2005) (explaining that "[a] settlement agreement is a contract that can only be invalidated upon a showing of fraud, duress, illegality, or mutual mistake").

[5] Chief Judge Hogan of this court ratified the BADGE settlement agreement and the subsequent amendment in the civil action *Johnson v. Reno*, Civ. No. 93-0206.

applies and the court grants summary judgment with respect to the first two counts of the complaint.

### D.  The Court Denies Summary Judgment on Counts III and IV

Counts III and IV allege that federal defendant Carter conspired to interfere, and did interfere, with the plaintiff's employment relationship with the OIG in 1998.  Compl. at 25, 70; Pl.'s Opp'n at 20.  The defendants argue that the court should dismiss these counts for a number of reasons, including: (1) res judicata, (2) failure to exhaust administrative remedies and (3) statute of limitations.  The court addresses each of these arguments in turn.

#### 1.  Counts III and IV are not Barred by Res Judicata

The defendants argue that res judicata bars the claims that Carter interfered with the plaintiff's employment relationship with the OIG in 1999.  Defs.' Mot. at 11.  The plaintiff, however, points out that Counts III and IV "evolved from the D.C. OIG's employment relationship with plaintiff in October 1998."  Pl.'s Opp'n at 20.  As stated *supra*, the plaintiff applied to work at the OIG twice: once in 1998 and once in 1999.  Although he litigated claims about his employment with the OIG in 1999, *Johnson v. Ashcroft et al.*, 2001 WL 34366565 (D.D.C. June 21, 2001), *aff'd*, 2003 WL 22890057 (D.C. Cir. Nov. 25, 2003), the plaintiff has not litigated any claims related to his application for employment at the OIG in 1998.  Because this court has not made any rulings with respect to the alleged discrimination and retaliation in 1998, res judicata is inapplicable.

## 2. The Defendants Have Not Shown that the Plaintiff Failed to Exhaust Administrative Remedies for Counts III and IV

The defendants also argue that the plaintiff did not exhaust his administrative remedies. Defs.' Mot. at 14-15.  Although the plaintiff counters that he need not exhaust administrative remedies,[6] the court does not have subject-matter jurisdiction over a claim unless the plaintiff complies with Title VII's exhaustion requirement.  *Fowler v. Dist. of Columbia*, 122 F. Supp. 2d 37, 39 (D.D.C. 2000).

### a. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies.  *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it").  Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden.  *Id.* at 12. (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

---

[6]   A novel proposition, the court notes, which the plaintiff has advanced on numerous occasions in his related proceedings.

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### b. The Defendants Have Not Met Their Burden

In the instant case, the plaintiff filed an administrative charge with the FBI's Equal Employment Opportunity Commission ("EEOC") on August 28, 2003. Pl.'s Opp'n, Ex. CC; *see also Johnson v. Gonzales*, 418 F. Supp. 2d 1 (D.D.C. 2006). The defendants, however, provide no information regarding the status of the plaintiff's EEOC charge.[7] Thus, it is not clear whether the plaintiff has exhausted administrative remedies. *Brown v. Marsh*, 777 F.2d at 13 (reversing a district court ruling that placed the burden of proving exhaustion on the plaintiff). Because the defendants have not met their burden of showing that the plaintiff failed to exhaust administrative remedies, the court declines to dismiss Counts III and IV on the basis of exhaustion.[8]

---

[7] The defendants' arguments on exhaustion apply only to the plaintiff's employment with the OIG in 1999, not 1998. Defs.' Mot. at 14-15 (stating that the plaintiff brings the same Title VII claim he brought in *Johnson v. Ashcroft et al.*, 2001 WL 34366565 (D.D.C. June 21, 2001), *aff'd*, 2003 WL 22890057 (D.C. Cir. Nov. 25, 2003)).

[8] The defendants also argue that Counts III and IV are barred by the statute of limitations. Defs.' Mot. at 15. Once again, however, the defendants' arguments relate to the plaintiff's 1999 employment with the OIG. Pl.'s Opp'n at 22. As this court already concluded when the D.C. defendants made the same argument in their motion to dismiss, the statute of limitations does not bar Counts III and IV. *Johnson v. Ashcroft et al.*, 2005 WL 2073752 (D.D.C. Aug. 17, 2005). Accordingly, the court denies summary judgment as to those counts.

### E.  The Court Grants Summary Judgment on Count V

On June 23, 1998, the plaintiff received a letter from the OWCP denying his workers' compensation claim.  Pl.'s Opp'n, Ex. JJ.  The OWCP denied the plaintiff's claim for compensation, stating that the plaintiff had not provided "sufficient evidence to establish that [he] sustained an injury in the performance of duty."  *Id.*  Count V alleges that federal defendants Carter and Schubert violated the plaintiff's due process rights by interfering with approval of the OWCP claim.  Compl. at 71.  The defendants move for summary judgment on that count, arguing that the claim is barred by res judicata.  Defs.' Mot. at 16.

As discussed *supra*, the 1998 settlement agreement explicitly states that the plaintiff agreed "to release and forever discharge" the defendants from liability for any claims "which were or could have been raised on or before the effective date."  *Johnson*, 2005 WL 2064095, at *5.  According to the plaintiff's form requesting workers' compensation for "discriminatory injuries," the plaintiff's alleged injury occurred on March 1998.  Defs.' Mot., Ex. 2.  Although the plaintiff argues that he was unaware that the defendants interfered with the approval of the OWCP claim until 2003, the plaintiff does not allege that the evidence was fraudulently concealed or that he was unable to discover this new evidence with due diligence.[9]  *Guerrero*, 774 F.2d at 508.  Accordingly, the court concludes that Count V is barred by res judicata.

---

[9]  Assuming *arguedo* that the plaintiff had alleged that the evidence was fraudulently concealed or that he was unable to discover it in the exercise of due diligence, court would nevertheless dismiss Count V because the plaintiff does not refute the defendants' assertion that he failed to exhaust administrative remedies with respect to that count.  *David v. United States*, 820 F.2d 1038, 1043-44 (9th Cir. 1987) (citing 28 U.S.C. § 2675(a)); *see also Soeken v. Herman*, 35 F. Supp. 2d 99 (D.D.C. 1999) (explaining the administrative process under the Federal Employees Compensation Act).

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendants' motion for summary judgment on Counts III and IV.  The court, however, grants the defendants' motion for summary judgment on Counts I, II and V.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of August, 2006.

                                                                    RICARDO M. URBINA
                                                                    United States District Judge