UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| EMANUEL JOHNSON, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1158 (RMU) |
| | : | | |
| v. | : | Document No.: | 33 |
| | : | | |
| ALBERTO GONZALES[1] *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

Granting the Federal Defendants' Motion to Alter or
Amend the Interlocutory Judgment[2]

I. INTRODUCTION

The *pro se* plaintiff, Emanuel Johnson, brings this employment discrimination suit against various employees of the Federal Bureau of Investigation ("FBI") and the District of Columbia ("D.C." or the "District") Office of the Inspector General ("OIG"). On August 28, 2006, the court dismissed three of the counts against the federal defendants,[3] holding that they were barred by res judicata. The court, however, denied the defendants' motion for summary

---

[1] Alberto Gonzales automatically is substituted for his predecessor, John Ashcroft, as Attorney General. Fed. R. Civ. P. 25(d)(1); *Network Project v. Corp. for Pub. Broad.*, 398 F. Supp. 1332, 1336 (D.D.C. 1975) (explaining that "[s]ubstitution is appropriate when the original officer is replaced by an acting officer").

[2] Although the defendants style the motion as a "motion to revise decision," the court refers to it as a motion to alter or amend the interlocutory judgment to parallel the language of Federal Rule of Civil Procedure 54(b). Rule 54(b) provides the relevant standard for analyzing the court's previous order because that order did not dispose of the entire case on the merits. *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004); *see also United States v. Robinson*, 1992 WL 168066, at *1 (D.C. Cir. June 5, 1992).

[3] The plaintiff sues various District of Columbia ("D.C." or the "District") employees (the "D.C. defendants"), as well as John Ashcroft, J.C. Carter, Danny O. Coulson, Ralph Lawrence, Steven Riggin, James W. Vatter and Edward Schubert (the "federal defendants").

judgment as to two of the counts against the federal defendants because the plaintiff had not previously litigated those claims. The federal defendants now move the court to alter its decision denying summary judgment as to those two counts. Because the plaintiff failed to timely exhaust his administrative remedies and has effectively deprived the court of subject-matter jurisdiction, the court grants the defendant's motion.

## II.  BACKGROUND

### A.  Factual History

The plaintiff is an African-American man who worked as a special agent with the FBI between 1973 and 1999. Compl. at 8. During that time, the plaintiff was the lead plaintiff in a Title VII class action lawsuit ("BADGE") filed in this court by African-American special agents against the FBI. *Id.* at 25. Under the 1993 BADGE settlement agreement, the plaintiff waived any then-pending claims arising out of the defendants' discriminatory employment practices. *Johnson v. Ashcroft* ("*Johnson II*"), 2005 WL 2064095, at *1 (D.D.C. Aug. 25, 2005).

After the BADGE lawsuit settled, the plaintiff brought another lawsuit, *Johnson v. Reno*, alleging retaliation based on his role as the lead plaintiff in the BADGE lawsuit. *Id.* The plaintiff settled the retaliation suit in June 1998. *Id.* Under the terms of the settlement agreement of this suit, the plaintiff agreed "to release and forever discharge" the FBI from liability from any claims "which were or could have been raised on or before the effective date" of the agreement. *Id.* at *5.

After retiring from the FBI, the plaintiff applied to work at the OIG twice: once in 1998 and once in 1999. *Johnson v. Ashcroft* ("*Johnson I*"), 2005 WL 2072752, at *1 (D.D.C. Aug. 17,

2005). The plaintiff alleges that D.C. defendant Prettyman offered him a position with the OIG in 1998, but the federal defendants' discriminatory actions prevented him from obtaining the position. *Id.* Specifically, the plaintiff alleges that federal defendant Carter made racially-charged statements to Prettyman regarding the plaintiff in 1998. *Id.* As a result, the plaintiff claims that he was not hired at the OIG when he first applied in 1998. The plaintiff states that he found out about Carter's disparaging statements to Prettyman when he heard testimony at a 2003 trial related to the plaintiff's termination from the OIG. *Id.*

### B. Procedural Background

The plaintiff filed the complaint in this action on July 9, 2004. On August 17, 2005, the court granted in part and denied in part the D.C. defendants' motion to dismiss. *Johnson*, 2005 WL 2073752, at *7, and on August 28, 2006, the court granted in part and denied in part the federal defendants' motion to dismiss. *Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 46 (D.D.C. 2006). In particular, the court dismissed Counts I, II and V of the plaintiff's claims against the federal defendants on the basis of res judicata. *Id.* The court denied summary judgment for the federal defendants on Counts III and IV because they related to the plaintiff's 1998 employment relationship with the OIG and those claims have not been previously litigated. *Id.* The federal defendants move the court to alter or amend its order denying summary judgment on Counts III and IV. The court now turns to that motion.

## III.  ANALYSIS

### A. Legal Standard for Altering or Amending an Interlocutory Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of

judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater,* 197 F.R.D. 185, 190 (D.D.C. 2000) (citing Federal Rule of Civil Procedure 60(b)'s Advisory Committee Notes). The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *Compare Muwekma Tribe v. Babbitt,* 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) and *United Mine Workers v. Pittston Co.,* 793 F. Supp. 339, 345 (D.D.C. 1992) *with LaRouche v. Dep't of Treasury,* 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) *and Harvey v. District of Columbia,* 949 F. Supp. 878, 879 (D.D.C. 1996). A motion pursuant to 59(e), to alter or amend a judgment after its entry, is not routinely granted. *Harvey,* 949 F. Supp. at 879. The primary reasons for altering or amending a judgment pursuant to Rule 59(e) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.; Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). Motions pursuant to Rule 60(b) may be granted for similar reasons. FED. R. CIV. P. 60(b); *LaRouche,* 112 F. Supp. 2d at 51-52. Reconsideration of an interlocutory decision is available under the standard, "as justice requires." *Childers,* 197 F.R.D. at 190.

### B. The Court Does Not Have Jurisdiction Over the Plaintiff's Claims

#### 1. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's

burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12. (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

**2. The Plaintiff Failed to Exhaust Administrative Remedies in a Timely Manner**

The defendants argue that the court should have dismissed the plaintiff's claims related to his 1998 non-selection for a position at the OIG for failure to exhaust his administrative remedies in a timely manner. Defs.' Mot. at 8. In particular, the defendants argue that the plaintiff did not

file an administrative charge until years after the discriminatory actions allegedly took place.[4] *Id.* at 8-13.

Pursuant to 29 C.F.R. § 1614.05(a)(1), "persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap . . . must initiate contact with a[n EEOC] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The 45-day limit is tolled, however, when the aggrieved person shows that he "did not know and reasonably should not have known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2). "In other words, EEO[C] procedures are time-barred if the plaintiff knew, or should have known, about the alleged discriminatory action 45 days prior to his filing" his EEOC charge. *Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.D.C. 2004). The plaintiff's time for filing an EEOC charge starts to run when the plaintiff has a reasonable suspicion that he has been the victim of discrimination. *Id.*; *see also McCants v. Glickman*, 180 F. Supp. 2d 35, 40 (D.D.C. 2001) and *Paredes v. Nagle*, 1982 WL 319, at *4 (D.D.C. 1982).

The court's previous order denied the defendants' motion to dismiss the plaintiff's claims that he had been the victim of discrimination when he was not hired at the OIG in 1998. *Johnson v. Ashcroft* ("*Johnson III*"), 445 F. Supp. 2d 45, 51 (D.D.C. 2006). The plaintiff filed an

---

[4] The defendants support the argument that the plaintiff failed to exhaust his administrative remedies in a timely manner with information that they did not provide to the court in the previous round of dispositive motions in this case. The defendants state that they "regret not providing [this information] earlier." Defs.' Mot. at 9. Although the court does not condone the defendants' failure to provide the information at an earlier stage of the litigation, the court recognizes that the plaintiffs' claims were not clearly stated in either his complaint or his briefs to the court, which appears to have impacted the defendants' decisions to not supply the information in the first place. Defs.' Mot. at 9 n.3 (stating that the analysis "necessarily changed" after the court clarified the nature of the plaintiff's claims); *See also*, *Johnson v. Ashcroft* ("*Johnson I*"), 2005 WL 2073752, at *1 (D.D.C. Aug. 17, 2005) (stating that it was unclear whether the plaintiff had applied to work at the OIG once or twice).

administrative charge with the FBI's EEOC office challenging his 1998 non-selection on August 28, 2003. *Id.* Because the plaintiff asserted he did not know of Carter's comments to Prettyman until 2003 and because the defendants provided no information to refute the plaintiff's assertions, *Johnson II*, 2005 WL 2073752, at * 5, the court concluded that the defendants had not met their burden of showing the plaintiff failed to exhaust administrative remedies. *Johnson III*, 445 F. Supp. 2d at 51.

The defendants' new information, however, shows that the plaintiff believed he had been the victim of discrimination years ago. Defs.' Mot., Ex. 1. In particular, the plaintiff stated, in a sworn statement to the EEOC, that he had suspected that Carter had made racially-charged statements to Prettyman in 1998. *Id* at 2, 4. He further states, "Although I suspected that Carter's negative influence played a role in the fact that the first job offer never materialized, I never had direct proof until the 2003 trial." *Id.* The applicable case law and regulation, however, do not allow a plaintiff to wait until he has direct proof of the allegedly discriminatory actions; rather, they require a plaintiff to file an EEOC charge even if he is not in possession of the "supportive facts" necessary to prosecute a discrimination charge. *Paredes*, 1982 WL, at * 4 (holding that the plaintiff's sworn statement to an EEOC investigator indicating that he had felt he had been the victim of discrimination constituted a reasonable suspicion and triggered the time for filing an EEOC charge). Because the plaintiff's statements show that he suspected Carter made racially-charged comments to Prettyman as far back as 1998 [5] and because the

---

[5] Moreover, the plaintiff alleged that in his 1998 interview at the OIG, Prettyman told him that he would be placed in a position within a couple of weeks. Defs.' Mot., Ex. 1 at 1; *see also Johnson v. Gonzalez*, Civ. Action No. 05-0469, Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. O. The plaintiff, however, never took any action to follow up or inquire about the job opening. *Id.*

plaintiff did not file an EEOC charge until August 2003, the court concludes that the plaintiff failed to timely exhaust his administrative remedies.[6]

## IV.  CONCLUSION

For the foregoing reasons, the court grants the federal defendants' motion to dismiss.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of March 2007.

RICARDO M. URBINA<br>
United States District Judge

---

[6] Because the court concludes that the plaintiff has failed to exhaust his administrative remedies, the court does not consider the federal defendants' arguments that the court applied the incorrect statute of limitations.  The court notes, however, that the § 1981 statute of limitations is not applicable because § 1981 only applies to state actors.  42 U.S.C. §1981 (c) (stating that "the rights protected under this section are protected against impairment by nongovernmental discrimination and impairment under color of State law").