**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

EMANUEL JOHNSON, JR.,   :
           :
     Plaintiff,   :  Civil Action No.:  04-1158 (RMU)
           :
     v.     :  Document Nos.:  40, 43
           :
MICHAEL MUKASEY[1] *et al.*,  :
           :
     Defendants.  :

## MEMORANDUM OPINION

### DENYING THE PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT[2] AND GRANTING THE FEDERAL DEFENDANTS' MOTION FOR FINAL JUDGMENT

## I. INTRODUCTION

The *pro se* plaintiff, Emanuel Johnson, brings this employment discrimination suit against the Attorney General and various employees of the Federal Bureau of Investigation (the "federal defendants") and against the Mayor of the District of Columbia ("D.C." or the "District") and various employees of the D.C. Office of the Inspector General (collectively the "D.C. defendants"). This case comes before the court on the plaintiff's motion to alter or amend the court's interlocutory judgment issued March 27, 2007 and on the federal defendants' motion for final judgment pursuant to Federal Rule of Civil Procedure 54(b). Because the plaintiff's

---

[1]  The court substitutes Michael Mukasey for his predecessor, Alberto Gonzales, as Attorney General. FED. R. CIV. P. 25(d)(1); *Network Project v. Corp. for Pub. Broad.*, 398 F. Supp. 1332, 1336 (D.D.C. 1975) (explaining that "[s]ubstitution is appropriate when the original officer is replaced by an acting officer").

[2]  The plaintiff styles his motion as a one for reconsideration pursuant to Federal Rule of Civil Procedure 60(b). However, because the plaintiff filed his motion before the court issued a final judgment, the court construes the plaintiff's motion as one to alter or amend pursuant to Federal Rule of Civil Procedure 54(b). *Compare* FED. R. CIV. P. 54(b) (providing for "revision [of a decision] at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties") *with* FED. R. CIV. P. 60(b) (stating that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding").

arguments that the federal defendants perpetrated a fraud on the court are meritless, and because the plaintiff had a reasonable suspicion that retaliatory action prevented him from receiving a position at the OIG after he interviewed there in October 1998, the court denies the plaintiff's motion to alter or amend its judgment.

In their motion for final judgment, the federal defendants request that the court certify the plaintiff's case against them as final because the legal issues are separable from those concerning the D.C. defendants and because there is no just reason for delay.  Failing to apply any legal analysis or reasoning, the plaintiff concludes that his claims are distinct.  Because all the claims against the federal defendants have been resolved, the claims are separable from those brought against the D.C. defendants and the equities favor final judgment, the court grants the federal defendants' motion for final judgment.

## II.  BACKGROUND

### A.  Factual History

The plaintiff worked as a special agent with the Federal Bureau of Investigation ("FBI") between 1973 and May 1999.  Compl. at 8.  In June of 1983, the plaintiff received a poor performance evaluation, and one of the plaintiff's evaluators recommended that he be removed from his position as a supervisor.  *Id.* ¶¶ 46-47, 64.  Suspecting discrimination, the plaintiff hired a lawyer to "initiate a civil suit against any of the individuals involved in the June 1983 performance appraisal."  *Id.* ¶ 89.  The plaintiff alleges that he was unsuccessful in his attempts to acquire the documents used to prepare his performance appraisal and the recommendation that he be removed as a supervisor because federal defendant Riggin destroyed them.  *Id.* ¶¶ 105-110.

In 1991, the plaintiff participated as the named plaintiff in a Title VII class action lawsuit representing African-American agents against the FBI. *Id.* ¶ 112. That lawsuit, commonly known as the BADGE lawsuit, settled in 1993. *Id.* ¶¶ 113-14. Under the terms of the 1993 settlement agreement, the plaintiff waived claims of "disparate impact . . . for which relief was awarded." *See Johnson v. Ashcroft* ("*Johnson I*"), 2005 WL 2064095, at *4 (D.D.C. Aug. 25, 2005). He did not, however, waive his right to bring claims alleging retaliation that might arise subsequent to the settlement. *Id.*

After the BADGE lawsuit settled, the plaintiff brought another lawsuit, *Johnson v. Reno* ("*Johnson II*"), before Judge Jackson in this court. *Id.*, at *1. He alleged that the FBI retaliated against him due to his involvement in the BADGE lawsuit and also discriminated against him based on his race, which led to a constructive discharge. *Id.* Specifically, the plaintiff asserted that the FBI management instituted an "unlawful systemwide retaliatory program against him based on his race with the unlawful purpose being to force his removal from the FBI and to destroy his upward mobility within the [FBI]." *Id.* The parties settled these claims in June 1998. *Id.*, at *1. Under the terms of the 1998 settlement agreement, which became effective June 9, 1998, the plaintiff agreed to "release and forever discharge" the FBI from liability from any claims "which were or could have been raised on or before the effective date" of the agreement. *Id.*, at *5. In short, the 1998 settlement agreement provides for a broad release of all claims related to the defendants' alleged discriminatory practices before June 9, 1998. *See id.* (noting that the agreement does not reserve the plaintiff's right to bring a suit based on the same underlying facts just because he alleges a new legal theory).

On July 2, 1998, the plaintiff filed a claim with the Office of Workmen's Compensation ("OWCP") seeking compensation for alleged stresses arising from: submission of false

documents for his 1983 performance appraisal; a contrived 1997 appraisal; an attempt by U.S. Marshals to frame him by placing illegal narcotics, weapons and ammunition where they would lead to further abashment; and "fourteen years of racial discrimination, retaliation, and exasperation." Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. JJ at 3. On June 23, 1998, OWCP sent the plaintiff a letter denying his claims because he had not provided "sufficient evidence to establish that [he] sustained an injury in the performance of duty." *Id.*, Ex. JJ at 4; Mem. Op. (Aug. 28, 2006) at 11.

Later that year, in October of 1998, the plaintiff applied to work at the D.C. Office of the Inspector General ("OIG"). Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. II at 4. Although the plaintiff fails to clearly explain the nature of his application to the OIG in this action, the Department of Justice's Final Agency Decision ("FAD") regarding the alleged FBI interference with his OIG employment relationship issued on December 7, 2004 provides additional background. *Id.* The plaintiff claims that at the end of his October 1998 interview, Inspector General Prettyman offered him a job to begin within a couple of weeks. *Id.* at 5. The plaintiff claims that Prettyman never got back to him, but the plaintiff never attempted to follow up with him about the position. *Id.*

On May 3, 1999, the plaintiff retired from the FBI, and in that same month, the plaintiff heard of job vacancies at the OIG from a friend. *Id.* He reapplied, and although the new Inspector General, Charles M. Maddox, knew about the plaintiff's involvement in the BADGE lawsuit, Maddox hired him to begin working on June 21, 1999. *Johnson v. Maddox* ("*Johnson III*"), 230 F. Supp. 2d 1, 3 (D.D.C. 2002). Although the plaintiff began working on June 21, 1999, his tenure was short lived. *Id.*

That same day, Maddox met with federal defendant Carter who told him that the FBI would not support the OIG on matters it assigned to the plaintiff. *Id*. Two days later, after his discussion with Carter, an OIG employee reassigned the plaintiff from the OIG Public Corruption Unit to the OIG General Investigations Unit. *Id*. at 5. Eight months later, on February 7, 2000, the plaintiff alleges that Maddox instructed supervisors to offer the plaintiff a choice of resignation or termination. *Id*. at 6. The plaintiff did not resign, and on February 16, 2000, the OIG sent the plaintiff a termination letter indicating his discharge would be effective March 1, 2000. *Id.* at 5-6.

Based on his reassignment and termination, the plaintiff brought an employment discrimination and retaliation lawsuit under Title VII against federal defendant Carter, D.C. defendant Maddox and others. *Johnson III*, 230 F. Supp. 2d at 1. The court determined that the plaintiff failed to timely exhaust his administrative remedies against the FBI employees because he failed to file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 45 days of his reasonable suspicion that his employer discriminated against him. *Johnson III*, No. 00-2743, slip op. at 5-9 (D.D.C. June 21, 2001). Accordingly, on June 21, 2001, the court dismissed all of the defendants except D.C. defendant Maddox. *Id.*

In February 2003, the court referred the case to Magistrate Judge Facciola for all purposes, and in April 2003, while his discrimination and retaliation suit was still pending before Magistrate Judge Facciola, the plaintiff claims to have become aware of facts surrounding a conspiracy to deny him due process. Mem. Op. (Aug. 17, 2005) at 12. Specifically, he claims to have discovered a false affidavit that certain D.C. defendants "encouraged David Bowie to sign" on May 10, 2000, but provides no further explanation. Compl. ¶ 413. He insists that the affidavit denied Magistrate Judge Facciola "the true facts of this matter [i.e., the circumstances

of the plaintiff's termination] which resulted in an adverse ruling by him against plaintiff." *Id.* ¶ 415.  He also alleges that he discovered a false trial exhibit filed by D.C. defendants Davis, Quon, Maddox, Andersen, Branson, John Koskinen, Kelvin Robinson and Judy Banks.  Mem. Op. (Aug. 17, 2005) at 12.

As stated in this court's Memorandum Opinion issued August 17, 2005, the 14-page transcript excerpt submitted by the plaintiff shows that Magistrate Judge Facciola investigated some of the plaintiff's concerns about the affidavit.  *Id*. at 12 n.6.  Furthermore, the e-mail that the plaintiff contends supports his allegation that the affidavit is untrue was part of the record before Magistrate Judge Facciola when he denied the plaintiff's claims on July 9, 2003.  *Id.* at 12 & n.6.  Thus, Magistrate Judge Facciola addressed the plaintiff's concerns surrounding the veracity of the affidavit.  *Id.*  Furthermore, the plaintiff never filed a Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b) alleging that Magistrate Judge Facciola based his decision on either a false affidavit or a false trial exhibit as he claims in the present case.  *Id*.

On August 28, 2003, the plaintiff filed a Title VII complaint with an Equal Employment Opportunity Officer ("EEO") at the FBI.  The Department of Justice Complaint Adjudication Office (DOJ-JCA) reviewed the plaintiff's complaint and determined that the FBI retaliated against the plaintiff when federal defendant Carter provided a negative employment reference to the D.C. OIG in October of 1998.  Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. II at 10.  The DOJ later withdrew this FAD, however, because the plaintiff filed a lawsuit in this court alleging the same retaliation claims before the DOJ-JCA issued the FAD.  *Johnson v. Gonzales*, 418 F. Supp. 2d 1, 3 (D.D.C. 2006).

### B.  Procedural History

The plaintiff filed this lawsuit on July 7, 2004 bringing suit against various D.C. and federal defendants.  Compl. at 1.  The plaintiff alleges that federal defendants Danny O. Coulson, Ralph Lawrence, Steven Riggin and James W. Vatter were involved in a conspiracy to deny due process by destroying documents used to prepare a negative performance evaluation he requested in preparation for a lawsuit he intended to bring in 1983 (Counts I and II).  *Id.* ¶¶ 42-110.  He also contends that federal defendant Carter and D.C. defendants Prettyman and Wyllie conspired to interfere with his employment relationship with the OIG (Counts III and IV).  *Id.* ¶¶ 111-409.  The plaintiff complains that they caused his reassignment and eventual firing and spread rumors about him.  *Id.*  He further asserts that federal defendants Carter and Schubert violated his due process rights by submitting a form to the OWCP in which Schubert allegedly lied (Count V).  *Id.* ¶¶ 410-411.  Finally, he alleges that D.C. defendants Koskinen, Robinson, Banks, Maddox, Andersen, Branson, Davis and Quon conspired to deny him his due process rights by falsifying an affidavit and trial exhibit which Magistrate Judge Facciola relied on in dismissing the plaintiff's claims in *Johnson III* (Counts VI-XII).  *Id.* ¶¶ 412-425.

On August 17, 2005, this court granted in part and denied in part the defendants' motion to dismiss the complaint.  Mem. Op. (Aug. 17, 2005) at 1.  Except for the claims against D.C. defendants Prettyman and Wyllie (Counts III and IV), the court *sua sponte* dismissed all the claims against the D.C. defendants (Counts VI-XII) because the claims were a collateral attack on the validity of Magistrate Judge Facciola's prior adverse judgment.  *Id.* at 2, 12.  This court noted that Magistrate Judge Facciola had occasion to review the veracity of the affidavit and that the plaintiff failed to file a motion for reconsideration alleging that Magistrate Judge Facciola erred in his review.  *Id.* at 12.  The court denied the D.C. defendants' motion to dismiss Counts

III and IV against Prettyman and Wyllie because the claims against them were not barred by the statute of limitations or res judicata. *Id*. at 10.

On August 28, 2006, the court denied in part and granted in part the federal defendants' motion for summary judgment. Mem. Op. (Aug. 28, 2006) at 1. The court dismissed Counts I and II because the alleged harm from the destruction of documents and the performance evaluation occurred in 1983, and the signatories to the BADGE settlement agreement executed an amendment in May 2000, which was to "resolve all outstanding class issues related to promotions, discipline, and performance evaluations." *Id.* at 7-8 (quoting *Johnson I*, 2005 WL 2064095, at *4). Moreover, the court noted that "the 1998 settlement agreement explicitly states that the plaintiff agreed 'to release and forever discharge' the defendant from liability for any claims 'which were or could have been raised on or before the effective dates.'" *Id.* (quoting *Johnson I*, 2005 WL 2064095, at *5). The court dismissed Count V because the alleged interference with the OWCP took place in February 1998 and the 1998 settlement agreement took effect in June 1998, thus barring the claim. *Id.* at 11.

The court, however, denied the federal defendants' motion for summary judgment on Counts III and IV alleging that federal defendant Carter conspired with D.C. defendants Prettyman and Wyllie to interfere with his employment relationship with the OIG. *Id.* at 8-10. The court explained that the federal defendants failed to meet the burden of proof necessary to show that the plaintiff failed to exhaust his administrative remedies. *Id.* at 10. On March 27, 2007, the federal defendants filed a motion to alter or amend the court's interlocutory judgment denying their motion with respect to federal defendant Carter and provided evidence that the plaintiff failed to timely exhaust his administrative remedies. Mem. Op. (Mar. 27, 2007) at 2. The court did not condone the federal defendants' failure to provide that evidence in the earlier

round of dispositive motions, but recognized that the failure resulted from the plaintiff's vague description of his claims. *Id.* at 6, n.4. Because failing to exhaust administrative remedies deprives the court of subject-matter jurisdiction, the court granted the federal defendants' motion. *See generally id.* The federal defendants then filed a motion for final judgment, and the plaintiff filed a motion to alter or amend the court's interlocutory judgment dismissing Counts III and IV against federal defendant Carter. The court now turns to these motions.

## III.  ANALYSIS

### A.  The Court Denies the Plaintiff's Motion to Alter or Amend
### the Court's Interlocutory Judgment

#### 1.  Legal Standard for Altering or Amending an Interlocutory Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing Federal Rule of Civil Procedure 60(b)'s Advisory Committee Notes). The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) *and United Mine Workers v. Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) *with LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) *and Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996). A motion pursuant to 59(e), to alter or amend a judgment after its entry, is not routinely granted. *Harvey*, 949 F. Supp. at 879. The primary reasons for altering or amending a judgment pursuant to Rule 59(e) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.

Cir. 1996) (per curiam).  Motions pursuant to Rule 60(b) may be granted for similar reasons.

FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52.  Reconsideration of an interlocutory

decision, however, is available "as justice requires."  *Childers*, 197 F.R.D. at 190.

### 2.  The Court Does Not Have Jurisdiction Over the Plaintiff's Claims

The plaintiff argues that the federal defendants proffered fraudulent documents on which

the court based its Memorandum Opinion issued March 27, 2007.  Pl.'s Mot. at 1-2.

Specifically, the plaintiff avers that the federal defendants contrived confusion over whether the

plaintiff applied once or twice to the OIG.  *Id.*  The plaintiff points to his affidavit, which states:

"the first time that I applied," referencing his first of two applications to the OIG, and the

plaintiff declares that the shading over of these words in his affidavit and other "critical words"

are clear indications that the federal defendants attempted to perpetrate a fraud on the court.  *Id.*

at 5-6.  First, as the federal defendants note, the words are not blacked out; they are highlighted.

*See* Fed. Defs.' Mot. to Alter or Amend J., Ex. 1 at 1.  Indeed, the words are not illegible, just

slightly more difficult to read.  *Id.*  Moreover, this argument as well as the plaintiff's remaining

arguments, which seek to undermine the legitimacy of the federal defendants' confusion over the

plaintiff's two applications to the OIG, *id.* at 6-13, fail to recognize that this court's decision did

not hinge on the federal defendants' purported confusion.  Instead, the court relied on evidence

that indicated that the plaintiff suspected that federal defendant Carter made racially-charged

statements to Prettyman in 1998, but did not file an administrative complaint until 2003.  Mem.

Op. (Mar. 27, 2007) at 7.  Because the law requires the plaintiff to contact an EEOC counselor

within 45 days of developing a reasonable suspicion that he had been the victim of

discrimination, the court dismissed Count III and IV for failing to timely exhaust administrative

remedies.  *See id.* at 6-7 (quoting 29 C.F.R. § 1614.105(a)).  The plaintiff's arguments, therefore,

do nothing to undercut this court's dismissal of the plaintiff's claims against federal defendant Carter (Counts III and IV) for failing to timely exhaust his administrative remedies. *Id.* at 6-8.

The plaintiff next asserts that he "could not enunciate a Title VII complaint in 1998," Pl.'s Mot. at 2, because his suspicion that Carter made a comment to officials at OIG was not reasonable in light of the FBI's policy prohibiting employees from providing recommendations based on past or present employment, *id.* at 14. The federal defendants counter that this argument should not be taken seriously in light of the plaintiff's "long history of distrust of FBI employment decisions." Fed. Defs.' Opp'n at 3. In addition to the long history of discrimination and retaliation suits the plaintiff has brought against the federal defendants, Pl.'s Reply at 7 (noting a "23-year history of engaging in deliberate actions designed to undermine the integrity of justice against this *same plaintiff*"), the plaintiff's suspicion was reasonable because in his 1998 interview at the OIG, Prettyman told the plaintiff that he would be placed in a position within a couple of weeks, Fed. Defs.' Mot. to Alter or Amend J., Ex. 1 at 2. The position, however, never materialized, and the plaintiff never followed up on Prettyman's pledge. Mem. Op. (Mar. 27, 2007) at 7 n.5. Because the circumstances supported the plaintiff's subjective belief, the time for filing an administrative complaint began running in 1998 and has long since past. The court, therefore, denies the plaintiff's motion to alter or amend the court's judgment dismissing Counts III and IV against federal defendant Carter for untimely exhaustion of administrative remedies.[3]

---

[3]     The plaintiff's final argument that the federal defendants improperly withdrew the Department of Justice's final agency decision, Pl.'s Mot. at 18-20, has already been soundly rejected by this court, *Johnson v. Gonzales*, 418 F. Supp. 2d 1, 3 (D.D.C. 2006) (holding that the plaintiff could not enforce a final agency decision because it was issued after he filed a discrimination suit).

### B.  The Court Grants the Federal Defendants' Motion for Final Judgment

### 1.  Legal Standard for Rule 54(b) Certification of Final Judgment

Federal Rule of Civil Procedure 54(b) allows a district court in a case with multiple parties or multiple claims to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  FED. R. CIV. P. 54(b).  The purpose of Rule 54(b) is to "mediate[] between the sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice."  *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 760 (D.C. Cir. 1997).

Whether a case is one of the "exceptional cases" qualifying for Rule 54(b) certification is a decision that falls within the discretion of the district court, which is "most likely to be familiar with the case and with any justifiable reasons for delay."  *Bldg. Indus. Ass'n of Super. Calif. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956)).  Under the rule, "the district court [functions] as a dispatcher, determining in its sound discretion when a claim should proceed on to appellate resolution and when it should await its fellows."  *Petties v. District of Columbia*, 227 F.3d 469, 472 (D.C. Cir. 2000) (internal quotations omitted); *see also Hill v. Henderson*, 195 F.3d 671, 672 (D.C. Cir. 2000) (describing Rule 54(b) as an "escape hatch" permitting a partial disposition to become a final judgment).

The district court, however, must make certain determinations on the record before the appellate court can acquire jurisdiction.  *Bldg. Indus. Ass'n*, 161 F.3d at 743; *see also Haynesworth v. Miller*, 820 F.2d 1245, 1253 (D.C. Cir. 1987) (noting that a district court's "[f]ailure to take the steps specified in Rule 54(b) is more than a mere technicality; without compliance, a federal court of appeals lacks jurisdiction to entertain challenges to the order").

First, the district court must ensure that it is dealing with a final judgment: "final" in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and "a 'judgment' in the sense that it determines a claim for relief." *Bldg. Indus. Ass'n*, 161 F.3d at 744 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)).

Second, the court must determine whether there is any just reason for delay, keeping in mind that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.* (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8). Before "departing from the norm" by certifying a final judgment, the court "*must* take into account judicial administrative interests," including "such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (emphasis in original) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8); *see also Hill*, 195 F.3d at 672 (noting that when review is deferred, "it is less likely that the appellate court will face overlapping issues and circumstances on two occasions"). The court also must consider the equities involved. *Bldg. Indus. Ass'n*, 161 F.3d at 744 (citing *Curtiss-Wright Corp.*, 446 U.S. at 8).

## 2. All Claims Against the Federal Defendants are Fully Resolved

The defendants argue that this case is ripe for final judgment under 54(b) because the court's rulings have resolved all claims against the federal defendants. Fed. Defs.' Mot. for Final J. ("Defs.' Mot.") at 2. The plaintiff does not address this issue. In deciding whether to grant a Rule 54(b) motion, district courts must first determine whether a claim or a party's interest has been fully resolved such that nothing remains for that party or claim but to await final disposition of the litigation. *See Curtiss-Wright Corp.*, 446 U.S. at 7. This court granted summary judgment

for the federal defendants on Counts I, II and V based on res judicata, Mem. Op. (Aug. 8, 2006) at 2, and subsequently dismissed Counts III and IV against federal defendant Carter for lack of jurisdiction, Mem. Op. (Mar. 27, 2007) at 2. Because Counts I-V are the only ones the plaintiff brings against the federal defendants, all claims against them have been fully resolved. *See Compagnie De Reassurance D'Ile de france v. New England Reinsurance Corp.*, 57 F.3d 56, 69 n.11 (1st Cir. 1995) (holding that when the district court's intention to deny outstanding counterclaims was apparent from its other rulings, all claims were deemed to be fully adjudicated for Rule 54(b) purposes).

### 3. The D.C. Defendants' and the Federal Defendants' Claims are Separable

Proceeding to the second step of the analysis, the court evaluates whether the claims against the federal defendants and the D.C. defendants are separable. The federal defendants do not explain why the claims are separable, and the plaintiff neglects this issue entirely. The relevant inquiry in deciding whether the claims are separable is whether the legal issues on which the court dismissed the counts against the federal defendants overlap with the legal issues on which the court dismissed the counts against the D.C. defendants such that granting final judgment to only some of the defendants would create the risk of the Circuit hearing the same issue twice. *See Bldg. Indus. Ass'n*, 161 F.3d at 744 (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8). Furthermore, "if the facts underlying different claims are different, then the claims are separate for Rule 54(b) purposes." *See Walters v. Morton Bldg., Inc.*, 737 F.2d 698, 702 (7th Cir. 1984) (noting that "if there are different facts (and of course different issues) consideration of the appeals piecemeal rather than all at once will not involve a duplication in the efforts required of the judges to prepare for argument in, and to decide, each appeal"). Accordingly, the court moves forward comparing the factual and legal bases for dismissing the claims brought

against the federal defendants with the factual and legal underpinnings for the claims that remain

pending against the D.C. defendants.  The court first compares the claims against federal

defendant Carter with the claims brought against the D.C. defendants and then compares the

claims against the remaining federal defendants with the claims brought against the D.C.

defendants.

### a. The Claims Against Federal Defendant Carter and the Claims Against the D.C. Defendants are Separable

The plaintiff brings Counts III and IV against federal defendant Carter and D.C.

defendants Prettyman and Wyllie.  He alleges that these individuals conspired to and did

interfere with his employment relationship with the OIG.  Compl. ¶¶ 111-409.  Although the

plaintiff suspected that federal defendant Carter made racially-charged statements to D.C.

defendant Prettyman in 1998, he did not bring his claim to the FBI EEO Officer until 2003,

violating the 45-day time limit.  29 C.F.R. § 1614.105(a)(1) (stating that "an aggrieved person

must initiate contact with a Counselor within 45 days of the date of the matter alleged to be

discriminatory"); Mem. Op. (Mar. 27, 2007) at 6-8.  Thus, this court ultimately dismissed the

claims against federal defendant Carter due to the plaintiff's failure to timely exhaust his

administrative remedies.  Mem. Op. (Mar. 27, 2007) at 6-8.

The court has not dismissed the claims against D.C. defendants Prettyman and Wyllie.

Pursuant to the Federal Rules of Civil Procedure, Prettyman and Wyllie may still bring a motion

to dismiss Counts III and IV for the plaintiff's failure to timely exhaust his administrative

remedies.  *See* FED. R. CIV. P. 12(b)(1), (h)(3).  Accordingly, D.C. defendants Prettyman and

Wyllie could still receive judgment on the same legal basis as federal defendant Carter.

Although the legal issues could be identical, these claims may still be separable if the factual

bases are different, *i.e.*, if the procedures for filing a complaint against D.C. defendants

Prettyman and Wyllie differ from the procedures for bringing a claim against federal defendant Carter.  *See Walters*, 737 F.2d at 702.

Title VII of the Civil Rights Act, codified in 42 U.S.C. § 2000e, makes it unlawful for an employer to discriminate on the basis of race.  Before bringing a civil action, however, 42 U.S.C. § 2000e-5(c) directs plaintiffs to pursue administrative remedies. Where a person alleges discrimination against a federal agency, he or she must file an EEO complaint with that federal agency's EEO officer.  *See* 29 C.F.R. § 1614.106(a). Although untimely, the plaintiff filed his complaint against federal defendant Carter with the appropriate EEO officer at the FBI.  Mem. Op. (Mar. 27, 2007) at 6-8.

Alternatively, to exhaust administrative remedies for discrimination claims against D.C. government officials, plaintiffs must file their complaint with either the EEOC or the D.C. Office of Human Rights ("DCOHR").  29 C.F.R. § 1601.13(a)(3)(ii). The record remains unclear as to whether the plaintiff properly pursued remedies against D.C. defendants Prettyman and Wyllie.  It is clear, however, that filing a complaint with either the EEOC or the DCOHR differs from the process the plaintiff went through in bringing his claim against federal defendant Carter – filing a complaint with the FBI EEO officer.  *Compare* Pl.'s Opp'n to Defs.' Mot to Dismiss, Ex. II (the final agency decision from the Department of Justice's Complaint Adjudication Office) *with* Defs.' Mot. for Recons., Ex. 6 (the plaintiff's letter to the EEOC "to officially register a Title VII retaliation complaint against the Government of the District of Columbia").  Because the underlying procedures for exhausting administrative remedies must be distinct in this case, the claims are separable.  *See Walters*, 737 F.2d at 702.

The court next compares Counts III and IV against federal defendant Carter with Counts VI-XII against several D.C. defendants.  This court dismissed Counts VI-XII because the plaintiff had ample opportunity to bring his concerns about alleged falsified affidavits and a trial exhibit before Magistrate Judge Facciola.  Mem. Op. (Aug. 17, 2005) at 10-12.  Thus, the court concluded that res judicata barred Counts VI-XII.  And, as stated *supra*, this court dismissed Counts III and IV against federal defendant Carter, alleging conspiracy to interfere with his employment at the OIG, because the plaintiff failed to timely exhaust his administrative remedies.  Mem. Op. (Mar. 27, 2007) at 6.  Because the legal bases on which the court dismissed the plaintiff's respective claims do not overlap and because the underlying facts that allegedly support these claims are distinct, the court concludes that these claims are separable.  *See Walters*, 737 F.2d at 702.

### b.  The Claims Against the Remaining Federal Defendants and the Claims Against the D.C. Defendants are Separable

The court must also compare Counts VI-XII against several of the D.C. defendants with Counts I, II and V against the federal defendants.  Counts I and II allege that federal defendants Coulson, Vatter, Lawrence and Riggin destroyed documents that the plaintiff requested as part of a planned lawsuit in 1983 challenging his performance appraisal.  Compl. ¶¶ 84-86, 108, 110.  This court granted summary judgment on Counts I and II because the amendment in May 2000 to the 1993 settlement agreement and the plain language of the 1998 settlement agreement released the defendant from liability on these claims.  Mem. Op. (Aug. 28, 2006) at 6-8.  Additionally, Count V alleges that federal defendants Carter and Schubert violated the plaintiff's due process rights by interfering with the plaintiff's OWCP claim.  Compl. ¶¶ 410-411.  Because the plaintiff's alleged injury occurred on February 16, 1998, Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. JJ at 2, and because the 1998 settlement agreement bars all claims "which were or

could have raised on or before the effective date" – June 9, 1998, this court granted summary judgment on Count V, *see* Mem. Op. (Aug. 8, 2006) at 11.

On the other hand, this court determined that res judicata bars Counts VI-XII because Magistrate Judge Facciola already considered the veracity of the affidavit.  Mem. Op. (Aug. 17, 2005) at 7.  Thus, the reasons for dismissing Counts VI-XII – Magistrate Judge Facciola's disposition of related claims – are distinct from the reasons for dismissing Counts I, II and V against the federal defendants – the amendment to the 1993 settlement agreement and the plain language of the 1998 settlement agreement.  In addition, the facts underlying Counts VI-XII, falsifying an affidavit and an exhibit, are distinct from the facts underlying Counts I, II and V against the federal defendants, destroying documents and a performance evaluation.  Because both the legal reasoning and the underlying facts are distinct, the court concludes that these claims are separable.

Finally, the court compares Counts I, II and V against the federal defendants with Counts III and IV against D.C. defendants Prettyman and Wyllie.  As explained *supra*, the 1993 and 1998 settlement agreements bar the plaintiff from bringing Counts I, II and V.  Mem. Op. (Aug. 8, 2006) at 11.  But Counts III and IV against D.C. defendants Prettyman and Wyllie cannot be barred by the 1993 or the 1998 settlement agreement because the events giving rise to these claims arose after June 9, 1998, the date the most recent settlement agreement became effective. Indeed, the plaintiff alleges that beginning in October 1998, Prettyman and Wyllie conspired to interfere with his employment at the OIG.  Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. II at 5; *Johnson I*, 2005 WL 2064095, at *4-5.  Because Counts III and IV against D.C. defendants Prettyman and Wyllie cannot be barred by the 1993 or 1998 settlement agreements, there is no risk of duplicative review on appeal should the court grant the federal defendants' motion for

final judgment.  Accordingly, the court determines that the claims against the federal defendants are separable from the claims against the D.C. defendants.

### 4.  The Equities Favor Final Judgment

Even though the issues may have been fully resolved and the claims may be separable, it is still within the court's discretion to grant or deny final judgment under 54(b) based on the equities involved.  *See Curtiss-Wright Corp.*, 446 U.S. at 10 (stating that when there is no just reason for delay, "the discretionary judgment of the district court should be given substantial deference, for that court is the one most likely to be familiar with the case and with any justifiable reasons for delay" (quoting *Sears*, 351 U.S. at 437) (internal quotations omitted)). Indeed, Rule 54(b) should apply only to the "exceptional case[]."  *Babbitt*, 161 F.3d at 743 (quoting *Sears*, 351 U.S. at 437).  The federal defendants argue that the burden on federal defendant Carter resulting from the lingering litigation, especially as he has been charged in an individual capacity, could adversely impact his job performance.  Defs.' Mot. at 2.  They further argue that because the claims against the other federal defendants stem from the allegations against Carter, they cannot be practically separated.  *Id.*  The plaintiff opposes the motion arguing that "the legal standards for resolving Title VII and Constitutional claims are distinct." Pl.'s Opp'n to Defs.' Mot. at 1-2.  Although vague, the plaintiff apparently contends that his claims against federal defendant Carter – the only federal defendant against whom he brings Title VII claims – are distinct from his due process claims, which he brings against all the federal defendants including Carter.  *Id.*

The court cannot infer that federal defendant Carter should be singled out for final judgment purposes based on the plaintiff's blurry argument that Title VII claims are distinct from constitutional claims.  First, the underlying facts of the claims against Carter and the other

federal defendants are interrelated – the plaintiff alleges that Carter retaliated against him for his involvement in claims against the FBI.  Compl. ¶¶ 364, 393-409.  Second, although the plaintiff did not bring a Title VII claim against any federal defendant other than Carter, he brought constitutional claims against all the federal defendants including Carter.  For instance, he argues that Carter conspired with another federal defendant, Schubert, to deny him due process by approving the submission of an allegedly false document to the OWCP.  *Id.* ¶ 411.  Consequently, the plaintiff's argument that Carter is unique among the federal defendants because Title VII claims are distinct from constitutional claims is otiose.

In weighing the equities, the court is reminded that the Supreme Court has recognized that insubstantial lawsuits create hardships on federal officers.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 n.35 (1982) (stating that "[i]nsubstantial lawsuits undermine the effectiveness of government as contemplated by our constitutional structure").  In *Butz*, the Supreme Court admonished that a "firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits."  *Butz v. Economou*, 438 U.S. 478, 508 (1978).  In this case, although the plaintiff's claims may have been meritorious at one time, the plaintiff agreed to "release and forever discharge" the FBI from liability for any claims "which were or could have been raised on or before" June 9, 1998.  *Johnson I*, 2005 WL 2064095, at *4. The 1993 and 1998 settlement agreements clearly bar the plaintiff's claims against all of the federal defendants except Carter.  *Id.*  But the plaintiff's claims against Carter are equally insubstantial because the plaintiff failed to timely exhaust his administrative remedies.  Mem. Op. (Mar. 27, 2007) at 6.  Accordingly, the court recognizes that the prejudice to the federal defendants outweighs any prejudice to the plaintiff, who may still pursue his remaining claims. *See Grimm v. Whitney-Fidalgo Seafoods, Inc.*, 61 F.R.D. 310, 312 (S.D.N.Y. 1974) (granting the

defendant's Rule 54(b) motion and, in its equities analysis, considering that the prejudice to the defendants of delaying judgment would outweigh the prejudice to the plaintiff of granting it).  In light of the Supreme Court's recommendation to firmly apply the Federal Rules of Civil Procedure to shield federal officials from insubstantial lawsuits, the court concludes that there is no just reason for delay and certifies the dismissal of the claims against the federal defendants as final.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion to alter or amend the court judgment issued March 27, 2007.  In addition, the court grants the federal defendants' motion for final judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously filed this 20th day of March 2008.

RICARDO M. URBINA
United States District Judge