## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| EMANUEL JOHNSON, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1158 |
| | : | | |
| v. | : | Document Nos.: | 51, 52 |
| | : | | |
| ERIC HOLDER[1] *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The *pro se* plaintiff, Emanuel Johnson, Jr., brings this employment discrimination suit against defendants Barrett Prettyman and Terry Wyllie for allegedly interfering with the plaintiff's selection for a position with the D.C. Office of the Inspector General ("OIG").   The defendants filed a motion to dismiss or, in the alternative, for summary judgment, on the grounds that the plaintiff cannot sue the defendants individually and separately under Title VII; the plaintiff failed to exhaust administrative remedies for a Title VII claim; and the statute of limitations bars the plaintiff's 42 U.S.C. § 1981 claim.   Because the plaintiff's failure to exhaust administrative remedies for a Title VII claim and the expiration of the four year statute of limitations on his § 1981 claim prevent these claims from going forward, the court grants the defendants' motion to dismiss and does not address the defendants' remaining arguments.

---

[1]      The court substitutes Eric Holder for his predecessor, Michael Mukasey, as Attorney General. FED. R. CIV. P. 25(d)(1); *Network Project v. Corp. for Pub. Broad.*, 398 F. Supp. 1332, 1336 (D.D.C. 1975) (explaining that "[s]ubstitution is appropriate when the original officer is replaced by an acting officer").

## II.  BACKGROUND

### A.  Factual History

The plaintiff was employed as a special agent with the Federal Bureau of Investigations ("FBI") between 1973 and 1999.  Compl. at 8.  In 1991, the plaintiff participated as the lead plaintiff in a Title VII class action lawsuit brought by African-American special agents against the FBI.  *Id.* ¶ 112.  That lawsuit, commonly known as the BADGE lawsuit, reached a settlement in 1993, requiring the plaintiff to waive any then-pending claims arising out of the defendants' alleged discriminatory practices.  *Johnson v. Ashcroft*, 2005 WL 2064095, at *4 (D.D.C. Aug. 25, 2005).

Following the settlement of the BADGE lawsuit, the plaintiff brought another lawsuit, *Johnson v. Reno*, alleging retaliation by the FBI based on his involvement in the prior lawsuit. *Id.*, at *1.  This retaliation suit reached a settlement in 1998, requiring the plaintiff to "release and forever discharge" the FBI from liability with respect to any claims "which were or could have been raised on or before the effective date" of the agreement.  *Id.*, at *5.

Later in 1998, the plaintiff applied to work at the OIG and was interviewed by defendant Prettyman, who at the time served as the Inspector General.  *Johnson v. Ashcroft*, 2005 WL 2072752, at *1 (D.D.C. Aug. 17, 2005).  The plaintiff alleges that at the end of the interview, Prettyman offered him a job.  *Id.*  The plaintiff, however, neither heard from Prettyman again regarding the position, nor followed up on Prettyman's offer, resulting in the plaintiff never assuming the position.  *Id.*  The plaintiff claims that Prettyman improperly considered racially-charged statements made by federal defendant J.C. Carter[2] in his ultimate decision not to hire the

---

[2]     Carter was the FBI Personnel Officer at the time the plaintiff was employed with the FBI. Compl. ¶ 117.  In an earlier memorandum opinion, the court dismissed the plaintiff's claims against defendant Carter for failing to exhaust his administrative remedies.  Mem. Op. (Mar. 27, 2007) at 5-8.

plaintiff in 1998.  Compl. ¶¶ 383-92.  Further, the plaintiff asserts that defendant Wyllie spread

rumors about the plaintiff which also interfered with the plaintiff's non-selection.  *Id.* ¶¶ 370-81.

## B.  Procedural History

The plaintiff filed the complaint instituting this action on July 9, 2004 against a number

of D.C. and federal defendants.  Compl. at 1.  He alleged that several federal defendants were

involved in a conspiracy to deny him due process by destroying documents that he requested in

preparation of a prior lawsuit.  *Id*. ¶¶ 42-110.  The court dismissed these claims as barred by the

plaintiff's 1998 settlement agreement, because the alleged actions occurred prior to that

agreement.  Mem. Op. (Aug. 28, 2006) at 7, 8.  In addition, the plaintiff asserted a claim against

eight D.C. defendants, alleging they denied his due process rights by falsifying an affidavit and

trial exhibit on which Magistrate Judge Facciola relied in rejecting earlier Title VII claims.

Compl. ¶¶ 412-25.  The court dismissed the due process claims, determining that they constituted

an improper collateral attack on the validity of Magistrate Judge Facciola's prior adverse

judgment.  Mem. Op. (Aug. 17, 2005) at 2, 12.  The plaintiff also alleged that federal defendant

Carter and D.C. defendants Prettyman and Wyllie conspired to interfere with the plaintiff's

employment relationship with the OIG.  Compl. ¶¶ 111-409.  The court dismissed the

interference claims against Carter due to the plaintiff's failure to exhaust administrative

remedies.  Mem. Op. (Mar. 27, 2007) at 5-8.  The remaining defendants, Prettyman and Wyllie,

filed a motion to dismiss, or in the alternative, for summary judgment to which the court now

turns.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.  The Court Lacks Jurisdiction over the Plaintiff's Title VII Claims

### 1.  Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it").  Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden.  *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies.  *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### 2.  The Plaintiff Did Not Timely Exhaust His Administrative Remedies

The defendants argue that the plaintiff failed to exhaust administrative remedies and, as a result, that the court should dismiss the Title VII claims against the defendants.  Defs.' Mot. at

11.  Specifically, the defendants contend that the plaintiff had a reasonable suspicion of his claims in 1999 and that he did not file his administrative charge with either the Equal Employment Opportunity Commission ("EEOC") or the D.C. Office of Human Rights ("OHR") within 300 days as required by 29 C.F.R. § 1601.13(a)(3)(ii).  *Id.* at 11-12.  In his opposition to the motion to dismiss, the plaintiff fails to respond to the defendants' exhaustion arguments.  *See generally* Pl.'s Opp'n.  Instead, the plaintiff declares that the basis for his claims against the defendants is 42 U.S.C. § 1981, which does not require exhaustion of administrative remedies. *Id.* at 3.  Due to his failure to respond to the Title VII exhaustion issue raised in the defendants' motion, the court may treat the defendants' arguments as conceded.  *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded").

Moreover, it is clear that the court lacks jurisdiction over the plaintiff's Title VII claim. An administrative charge for a Title VII claim is considered timely if it is filed with the EEOC within 180 days or with the OHR within 300 days of developing a reasonable suspicion of the alleged harm.  *See* 42 U.S.C. § 2000e-5(e)(1).  As the court has already determined, the plaintiff's sworn statement to the EEOC shows that the plaintiff had a reasonable suspicion of the alleged discrimination against him as early as 1998.  Mem. Op. (Mar. 27, 2007) at 7 (concluding that the plaintiff's acknowledgement that he "suspected that Carter's negative influence played a role in the fact that the first job never materialized" was sufficient to start the time to exhaust his administrative remedies).  The plaintiff did not act on these suspicions, instead choosing to wait for the direct proof of the alleged discrimination that the plaintiff contends was revealed during the 2003 trial.  Defs.' Mot., Ex. B at 4.  Direct proof of

discrimination is not required, however.  *See Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.D.C.

2004) (holding that the time limit on a statute of limitations begins when the plaintiff "has a

reasonable suspicion that he has been the victim of discrimination").  Because the plaintiff had a

reasonable suspicion as early as 1998 of the alleged discrimination actions against him, the filing

of an administrative complaint with the EEOC in August 2003 was untimely.  The court,

therefore, grants the defendants' motion to dismiss the Title VII claims brought by the plaintiff

against defendants Willey and Prettyman for failing to timely exhaust his administrative

remedies.

### C.  The Statute of Limitations Bars the Plaintiff's 42 U.S.C. § 1981 Claims

The defendants next allege that new evidence regarding the statute of limitations warrants

dismissal of the plaintiff's 42 U.S.C. § 1981 claims.  Defs.' Mot. at 13.  More specifically, the

defendants reference the plaintiff's sworn statement from March 28, 2008 to demonstrate that he

was aware of the alleged discriminatory acts.  *Id.* (noting the plaintiff's statements that alleged

the FBI used the term "loose cannon" to describe him).  Because § 1981 claims must be brought

within four years of the plaintiff becoming aware of the alleged violation, the defendants reason

that the plaintiff's complaint, filed July 9, 2004, is time barred.  *Id.*  The plaintiff retorts that the

defendants wrongly rely on the plaintiff's EEO statement to infer knowledge of a discriminatory

act.  Pl.'s Opp'n at 4-5.  The plaintiff's March 28, 2000 sworn statement to the EEOC discusses

statements by federal defendant Carter, but the plaintiff claims that he understood those

statements to reference someone other than himself.  *Id.*  Furthermore, the plaintiff maintains that

he was not aware of any discriminatory acts at the time of his statement to the EEOC as he did

not infer Carter's "loose cannon" remarks to have any racial connotation.  *Id.*  As such, the

plaintiff insists that he had no knowledge of the alleged discriminatory actions prior to the 2003 trial.  *Id.*

The limitations period begins to run when a plaintiff becomes aware of the alleged harm. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979) (holding that for a limitation period to begin, the plaintiff must know that he has been hurt and who inflicted the injury).  Before the defendants submitted the plaintiff's sworn statement indicating that he suspected the alleged discriminatory acts as far back as 1998, the court held that the plaintiff timely filed his § 1981 claims.  *See* Mem. Op. (Aug. 17, 2005) at 9.  In March 2007, however, based on the plaintiff's 1998 sworn statement, the court concluded that the limitation period for the plaintiff's Title VII claims began to run in 1998.[3]  Mem. Op. (Mar. 27, 2007) at 7-8.  Because the facts giving rise to these claims are identical, the plaintiff's suspicions also trigger the statute of limitations for the plaintiff's § 1981 claim.  *See McWilliams v. Escambia Co. Sch. Bd.*, 658 F.2d 326, 330 (5th Cir. Unit B 1981) (holding that "[t]he limitations period for § 1981 and § 1983 employment discrimination cases commences when the plaintiff knows or reasonably should know that the discriminatory act has occurred, the same point from which the Title VII 180-day limitation period runs").  Accordingly, the plaintiff's filing of this action in July 2004 exceeds the four year statute of limitations.

Finally, the plaintiff contends that he is entitled to equitable tolling based on the "undermining of the integrity of judicial proceedings" by various individuals related to this action.  Pl.'s Opp'n at 18-19.  This Circuit has consistently held that equitable tolling should be applied sparingly, only in "extraordinary and carefully circumscribed" instances.  *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *Washington v. Washington Metro. Area*

---

[3]     It is unclear why the defendants reference statements made by the plaintiff in 2000 and not his earlier 1998 sworn statement.

*Transit Auth.*, 160 F.3d 750, 753 (D.C. Cir. 1998); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579-580 (D.C. Cir. 1998).  "Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence [he] is unable to obtain vital information bearing on the existence of [his] claim."  *Smith-Haynie*, 155 F.3d at 579.  The burden is on the plaintiff to prove facts that support an equitable tolling defense.  *See Aceto*, 328 F. Supp. 2d at 6.

The plaintiff alleges that various individuals undermined the integrity of judicial proceedings to the point that the plaintiff could not through "due diligence" discover the alleged actions.  Pl.'s Opp'n at 7-17.  Specifically, the plaintiff claims that defendant Prettyman undermined the integrity of judicial proceedings through "selective memory," as Prettyman could not recall the individual who told him to contact Carter regarding the plaintiff's application.  *Id.* at 9-10.  Knowing who referred Prettyman to Carter, however, does nothing to prevent the plaintiff from proceeding with his claim against the defendants.  *See Smith-Haynie*, 155 F.3d at 579 (requiring the plaintiff to demonstrate that he is "unable to obtain vital information bearing on the existence of [his] claim).  Accordingly, the plaintiff has not met his burden.

The plaintiff also insists that contradictory statements made by Charles Maddox, Inspector General of the District of Columbia, undermine the integrity of judicial proceedings.  Pl.'s Opp'n at 11-14.  The plaintiff cites conflicting statements regarding Maddox's role in assigning the plaintiff to a particular investigation at the OIG.  *Id.* at 11-12.  But it is far from clear what impact, if any, Maddox's role in assigning the plaintiff to the particular investigation has on the plaintiff's ability to uncover vital information regarding the existence of his discrimination claim against the defendants.  Therefore, this argument, too, fails to carry the plaintiff's burden.  Moreover, this alleged usurpation of the judicial process, as well as the other

alleged acts of subterfuge by Gail Davis and Karen Branson (respectively Assistant Corporation Counsel and General Counsel for the District of Columbia) reference events that occurred after the plaintiff developed suspicions of the alleged discrimination.  The plaintiff fails to present any evidence explaining why he was prevented from bringing his claims in the four years following his suspicions of discrimination, which arose in 1998.  Accordingly, the plaintiff's arguments are unpersuasive, and the court grants the defendants' motion to dismiss the plaintiff's § 1981 claims as time barred.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of February, 2009.

RICARDO M. URBINA
United States District Judge